UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80684-CIV-CANNON/Reinhart

FI REAL ESTATE FUND TWO LP,

     Plaintiff,

v.

DONDA, LLC,

     Defendant.

_____/

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF No. 32] AND GRANTING MOTION TO DISMISS [ECF No. 19]

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Amended Complaint (the "Motion") [ECF No. 19]. The Motion was referred to Magistrate Judge Bruce E. Reinhart for a report and recommendation [ECF No. 24]. Following referral, Judge Reinhart held a motion hearing [ECF No. 28] and ordered supplemental briefing from the parties "addressing which state's laws should be used to resolve the Motion to Dismiss" [ECF No. 29 p. 6]. The parties timely filed their supplemental briefs [ECF Nos. 30, 31]. On August 17, 2023, Judge Reinhart issued a report recommending that Defendant's Motion be granted (the "Report") [ECF No. 32]. Plaintiff filed Objections to the Report [ECF No. 34], to which Defendant responded [ECF No. 35].[1] The Court has reviewed the Report [ECF No. 32], Plaintiff's Objections [ECF No. 34], Defendant's Response [ECF No. 35], and the full record. For the reasons set forth below, the Report [ECF No. 32] is **ACCEPTED**; the Motion [ECF No. 19] is **GRANTED**; and Plaintiff's First Amended Complaint [ECF No. 7] is **DISMISSED WITH PREJUDICE**.

_____

[1] Defendant filed a Notice of Non-Objection to the Report [ECF No. 33].

## RELEVANT BACKGROUND

The following facts are drawn from the First Amended Complaint ("Amended Complaint") [ECF No. 7] and accepted as true for purposes of this Order.[2]

This case arises from Plaintiff's attempt to purchase a piece of commercial real property from Defendant.  Defendant is the owner of commercial real property located in Oak Ridge, Tennessee (the "Property") [ECF No. 7 ¶ 6].  In February 2023, Plaintiff learned of a potential opportunity to purchase the Property [ECF No. 7 ¶ 7].  Plaintiff and Defendant, through their real estate agents, then begin to negotiate a "framework agreement for the purchase and sale of the Property" [ECF No. 7 ¶ 8].  Plaintiff and Defendant reached an agreement on "the major terms of a purchase and sale agreement for the Property and memorialized their agreement in a detailed letter of intent [which was] fully executed on March 3, 2023 ("LOI")" [ECF No. 7 ¶ 10; ECF No. 7-1 (attached LOI)].  Plaintiff signed the LOI on March 2, 2023; Defendant's managing member then signed the LOI on behalf of Defendant on March 3, 2023 [ECF No. 7 ¶ 11].  Defendant's agent emailed the signed LOI to Plaintiff's agent [ECF No. 7 ¶ 11].[3]

The LOI identifies Plaintiff as the Buyer and lists the Seller as "Seller of Record," setting a purchase price of $4,200,000 [ECF No. 7 ¶ 12].  The specific terms and conditions outlined in the LOI include "the specific property, purchase price, deposit, title and escrow, due diligence,

---

[2] The Court dismissed Plaintiff's initial Complaint as an improper shotgun pleading and permitted repleading consistent with that Order [ECF No. 4].

[3] In ordering supplemental briefing, Judge Reinhart permitted the parties to "supplement the factual record, but only with evidence relevant to the choice-of-law issue" [ECF No. 29 p. 6].  *See Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc*., 363 F.3d 1089, 1092–93 (11th Cir. 2004 ("The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract [wa]s done." (internal quotation marks omitted)).  As illustrated by the Affidavit attached to Defendant's Supplemental Brief, Defendant's agent, Alexander Nulf, sent the email from Englewood, Florida [ECF No. 31-2 ¶ 8].  The record contains no contrary evidence on that point.

closing, financing, 1031 exchange[,] and duties of both parties providing consideration for the agreement" [ECF No. 7 ¶ 13]. The parties acknowledged that "not all material terms" were contained in the LOI, but rather that those terms would be "subject to further good faith negotiation" [ECF No. 7 ¶ 14]. To that end, the parties "unequivocally agreed to negotiate the open terms and execute a purchase and sale agreement within fifteen days" [ECF No. 7 ¶ 13]. The LOI also contains a requirement that the parties "negotiate exclusively" with one another "and not with any other potential purchasers" [ECF No. 7 ¶ 15; ECF No. 7-1 p. 3].

On March 16, 2023, Plaintiff's agent texted Defendant's agent to check in on the drafting of the purchase and sale agreement [ECF No. 7 ¶ 17]. Defendant's agent responded that Defendant was "unilaterally repudiating and terminating the LOI and the deal terms stated therein, including the agreed-upon purchase price" [ECF No. 7 ¶ 17]. Plaintiff's agent replied on March 17, 2023, stating that Plaintiff believed this repudiation to be a "breach of the LOI and bad faith" [ECF No. 7 ¶ 18]. On March 21, 2023, Defendant's agent emailed Plaintiff's agent and confirmed that Defendant terminated the LOI because Defendant "wanted to obtain more money" [ECF No. 7 ¶ 19]. On April 5, 2023, Defendant's agent texted Plaintiff's agent and said that Defendant had found a new tenant for the Property and was willing to sell for a higher price of $5 million [ECF No. 7 ¶ 20]. Plaintiff alleges that Defendant and its agent "used the LOI's purchase price to solicit higher offers from third parties" [ECF No. 7 ¶ 21].

On the basis of these allegations, Plaintiff filed a five-count Amended Complaint against Defendant [ECF No. 7]. The Amended Complaint asserts the following claims against Defendant:

- Count I – Specific Performance [ECF No. 7 ¶¶ 22–40].

- Count II – Declaratory Relief [ECF No. 7 ¶¶ 41–47].

- Count III – Breach of Contract [ECF No. 7 ¶¶ 48–62].

- Count IV – Breach of Implied Duty of Good Faith and Fair Dealing [ECF No. 7 ¶¶ 63–74].

- Count V – Unjust Enrichment [ECF No. 7 ¶¶ 75–86].

On June 14, 2023, Defendant filed a Motion to Dismiss, arguing that all counts in the Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 19].  On August 17, 2023, Judge Reinhart issued the instant Report, recommending that Defendant's Motion to Dismiss be granted and the Amended Complaint be dismissed with prejudice [ECF No. 32].  The Report is ripe for adjudication [ECF Nos. 34, 35].

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made.  *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).  A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).  To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record.  *Macort*, 208 F. App'x at 784.  Legal conclusions are reviewed de novo, even in the absence of an objection.  *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

The Report recommends that the Court dismiss the Amended Complaint with prejudice, finding that any amendment would be futile [ECF No. 32 p. 12].  The Report first determines that,

viewing the evidence in the light most favorable to Plaintiff, the LOI represented an agreement of the parties "to exclusively negotiate in good faith for fifteen days" [ECF No. 32 p. 6].  Under that rubric, the Report continues, the pertinent question is whether the LOI is an enforceable contract, and if so, what duties derive from that agreement [ECF No. 32 p. 6].  To answer that question, the Report initially determines that Florida law applies to the parties' dispute [ECF No. 32 pp. 6–8].  As the Report explains, this is a "contract case[] unrelated to the conveyance of an interest in real property"—meaning that "the laws of the jurisdiction where the contract was executed govern" [ECF No. 32 p. 7].  Here, because the "last act necessary to complete the contract" took place in Florida—specifically, the email of the executed LOI from Defendant's agent located in Florida to Plaintiff's agent—the Report concludes that Florida law applies to the dispute [ECF No. 32 pp. 7–8].

Applying Florida law, the Report determines that "the unambiguous terms of the LOI show that it does not represent an agreement on the essential terms of the transaction" [ECF No. 32 pp. 9–10].  Specifically, the Report notes that the LOI merely "listed the terms acceptable" to Plaintiff and did not "ask [Defendant] to accept these terms" [ECF No. 32 p. 10].  Instead, the LOI merely "asked [Defendant] to indicate its willingness to have [good faith] negotiations by signing the LOI" [ECF No. 32 p. 10].  Therefore, the Report notes that Defendant's "signature was not an agreement to the proposed terms, but rather was an agreement only to continue negotiations for fifteen days" [ECF No. 32 pp. 10–11].  As there is no enforceable contract and therefore no enforceable duty of good faith and fair dealing, the Report recommends dismissal of the breach of contract claim (Count III) and the breach of implied duty of good faith and fair dealing claim (Count IV) [ECF No. 32 p. 11].  Counts I and II also require dismissal, the Report concludes, because there can be no specific performance in the absence of an enforceable contract (Count I); and there is no

ripe controversy for declaratory relief in the absence of an enforceable agreement (Count II). Finally, the Report recommends dismissal of the unjust enrichment claim (Count V), because the Amended Complaint's allegation that Plaintiff conferred a benefit on Defendant "presumes a non-existent fact," namely, that Plaintiff eventually would have bought the Property after good faith negotiations, but it is "speculative that a final mutually-agreeable bargain would have been reached" [ECF No. 32 p. 12].  In the absence of a plausible allegation that Plaintiff in fact conferred a benefit on Defendant, the Report concludes that the unjust enrichment claim is due to be dismissed [ECF No. 32 p. 12].  And because "[f]urther amendment would be futile," the Report recommends that any such dismissal be with prejudice [ECF No. 32 p. 12].

Though Plaintiff objects to the Report's conclusion that Florida law governs the parties' dispute [ECF No. 34 pp. 3–4], Plaintiff concedes that "there is no practical difference between Florida and Tennessee law when it comes to the LOI's contractual obligation to negotiate in good faith" [ECF No. 34 p. 5 n.3].[4]  Regardless, Plaintiff argues that the Report erred in finding that the LOI does not constitute an enforceable contract [ECF No. 34 pp. 5–9].  Plaintiff criticizes the Report for "conflat[ing] the issues of whether the LOI included an enforceable contract to negotiate in good faith with the separate issue of whether the LOI was an enforceable contract for the sale of property" [ECF No. 34 p. 6], leading the Report to rely on inapposite case law [ECF No. 34 pp. 8–9 (citing *Aldora Alumnium & Glass Prod., Inc. v. PomaGlass & Specialty Windows, Inc.*, 683 F. App'x 764 (11th Cir. 2017))].  The mere fact "that some of the terms required further negotiations does not negate the binding nature of the agreement," Plaintiff argues, because the

---

[4] Plaintiff argues that Tennessee law governs the parties' dispute because the dispute is "centered on real property," which is governed by "the law of the state in which the real estate lies [ECF No. 34 pp. 3–4], in this case, Tennessee [ECF No. 7 ¶ 6].  Plaintiff does not otherwise object to the Report's conclusion that the "last act necessary to complete the contract" occurred in Florida [ECF No. 32 pp. 7–8; *see* ECF No. 34].

LOI is an enforceable contract which "establish[es] the parameters for the parties' continued negotiations" [ECF No. 34 pp. 6–8]. Plaintiff also objects to the Report's recommendation that the remaining counts be dismissed. Regarding the breach of implied duty of good faith and fair dealing claim, according to Plaintiff, the Amended Complaint makes clear that the LOI has a binding good-faith term," and that Defendants' failure to negotiate a purchase agreement breached that duty [ECF No. 34 pp. 10–11]. On the unjust enrichment claim, Plaintiff argues that the Report "imposed too high a burden on Plaintiff at the motion to dismiss stage," because the allegations in the Amended Complaint show that "[a] reasonable jury could find that, absent [Defendant's] actions, the parties would have finalized a contract" [ECF No. 34 pp. 12–13]. Finally, Plaintiff makes the conclusory statement that the Report erred in determining that Plaintiff's claims for specific performance and declaratory relief fail in the absence of an enforceable agreement between the parties [ECF No. 34 p. 14].

At the outset, the Court agrees with the Report that Florida law applies to the parties' dispute [ECF No. 32 pp. 7–8]. The text of the parties' agreement makes clear that the LOI is not a contract for the purchase of the Property as Plaintiff contends [*see* ECF No. 34 pp. 3–4], but rather obligates the parties "only to attempt to negotiate terms for a Purchase Contract" [ECF No. 7-1 p. 3]. As such, the Court agrees with the Report that the parties' instant dispute— though related in a broad sense to the purchase of the Property—is fundamentally about the enforceability of the LOI, which is not a contract that conveys an interest in real property [ECF No. 32 p. 7]. Therefore, since it is undisputed that the "last act necessary to complete the contract"—i.e., the transmission by email of the fully-executed LOI from Defendant's agent to

Plaintiff's agent—took place in Florida, the Report correctly concludes that Florida law applies to the parties' dispute [ECF No. 32 pp. 7–8].[5]

Applying the relevant Florida law, the Court agrees with the Report's conclusion that although the LOI may have been an agreement to "exclusively negotiate in good faith for fifteen days," the LOI did not by itself give rise to any enforceable rights or duties [ECF No. 32 pp. 8– 11]. Florida courts "'recognize a contract so long as no essential terms remain open for consideration and negotiation.'" *Berkery v. Pratt*, 390 F. App'x 904, 907 (11th Cir. 2010) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 301 (Fla. Dist. Ct. App. 1999)). While Plaintiff may be correct that "letters of intent are not categorically unenforceable in Florida" [ECF No. 34 p. 8], if the essential terms "'are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.'" *Aldora*, 683 F. App'x at 767 (quoting *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990)); *see also ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2007) ("'[A]n agreement to agree' is unenforceable as a matter of law."). Here, the Report correctly concludes that the parties' LOI represents such an unenforceable "agreement to agree." *See ABC Liquors, Inc.*, 967 So. 2d at 1056. The terms in the LOI are indefinite and do not represent a "meeting of the minds" on all essential terms [ECF No. 7-1 pp. 2–3]. On its first page, the LOI is clear that it does not constitute an agreement on the major issues related to purchase of the Property (i.e., price, condition, etc.); rather, the LOI "outlines the major terms and conditions in which [Plaintiff] would enter into a Purchase and Sale Agreement for the below referenced property" [ECF No. 7-1 p. 2]. By signing the agreement, the only thing Defendant agreed to do was "to

---

[5] In any event, as Plaintiff concedes, "there is no practical difference between Florida and Tennessee law when it comes to the LOI's contractual obligation to negotiate in good faith" [ECF No. 34 p. 5 n.3].

proceed in good faith to attempt to negotiate a mutually acceptable Purchase Contract" [ECF No. 7-1 p. 3]. As such, the essential terms of the contract "are so uncertain that there is no basis for deciding whether the agreement has been kept or broken." *See Aldora*, 683 F. App'x at 767. In the absence of an enforceable contract, the Court agrees with the Report that the breach of contract claim (Count III) must be dismissed [ECF No. 32 p. 11].

The Court similarly agrees with the Report that the remaining counts are due to be dismissed [ECF No. 32 pp. 11–12]. Plaintiff's objection to the Report's recommendation on the breach of implied duty of good faith and fair dealing claim (Count IV) presumes the existence of an enforceable contract between the parties [ECF No. 34 pp. 10–11]. As discussed above, however, no such contract exists in this case. And, as the Report properly notes, no duty of good faith and fair dealing exists in the absence of a valid contract [ECF No. 32 p. 11 (citing *Aldora*, 683 F. App'x at 769)]. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("This court has held that a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."). Count IV (breach of implied duty of good faith and fair dealing) is therefore subject to dismissal. Counts I (specific performance) and II (declaratory relief) also require dismissal for the reasons stated in the Report [ECF No. 32 p. 11]. Plaintiff's conclusory objections [ECF No. 34 p. 14] do not change the analysis.

Finally, the Court disagrees with Plaintiff that the Report "imposed too high a burden on Plaintiff at the motion to dismiss stage" [ECF No. 34 pp. 11–14] in recommending dismissal of Count V (unjust enrichment) [ECF No. 32 p. 12]. The Report correctly concludes that Plaintiff's allegation of a benefit conferred on Defendant in the form of "ownership and increased revenue, profits, business value and equity value in the Property that rightfully belong to Plaintiff"

[ECF No. 7 ¶ 80], presumes that Plaintiff eventually would have purchased the property from Defendant—an outcome that is far from certain based on the allegations in the Complaint and the LOI [ECF No. 32 p. 12]. In the absence of a concrete benefit conferred on Defendant, which the Amended Complaint lacks, Plaintiff's unjust enrichment claim (Count V) is due to be dismissed.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 32] is **ACCEPTED**.

2. Defendant's Motion to Dismiss Amended Complaint [ECF No. 19] is **GRANTED**.

3. Plaintiff's First Amended Complaint [ECF No. 7] is **DISMISSED WITH PREJUDICE**.[6]

4. Final judgment to issue by separate order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 10th day of October 2023.

AILEEN M. CANNON
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[6] The Court agrees with the Report that "[f]urther amendment would be futile" [ECF No. 32 p. 12]. Plaintiff offers nothing [*see* ECF Nos. 20, 34] to suggest that further amendment would cure the deficiencies outlined in the Report and accepted in this Order. Nor has Plaintiff requested an opportunity to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp*., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").